**SOUDERTON AREA SCHOOL DISTRICT, Petitioner,**

**v.**

**SOUDERTON CHARTER SCHOOL COLLABORATIVE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 2000.

Decided Dec. 29, 2000.

Jeffrey T. Sultanik, Lansdale, for petitioner.

Michael J. Brooks, Doylestown, for respondent.

Before FRIEDMAN, Judge,
FLAHERTY, Judge and NARICK, Senior Judge.

FRIEDMAN, Judge.

In a case involving the interpretation and application of the Charter School Law (CSL),[1] the Souderton Area School District (School District) appeals from a December 23, 1999 order of the State Charter School Appeal Board (CAB) that: (1) reversed the decision of the School District's Board of School Directors (District Board) to deny Souderton Charter School Collaborative's (Collaborative) charter school application; (2) directed the District Board to grant Collaborative's charter school application and sign Collaborative's charter;[2] and (3) denied the School District's Motion to Dismiss. We affirm the CAB's order.

On September 11, 1997, Collaborative submitted its charter school application (Application) to the District Board, requesting a five-year charter pursuant to the CSL. (R.R. at 93a–312a.) For its charter school, Collaborative proposes to develop an individual education plan for each student, implementing a self-directed approach to education in which the children will be included in determining the content and direction of their education and relying heavily upon parent and community participation in the learning process.[3] (CAB's Findings of Fact, No. 9.)

At public hearings on the Application, the District Board received testimony from Collaborative in support of the Application, as well as testimony from the School District administration and members of the public. In addition, various exhibits were entered into the record. At its December 18, 1997 public meeting, the District Board voted to deny Collaborative's Application and set forth its reasons for the denial in a written Notice of Determination. (R.R. at 537a–84a.) Summarizing these reasons, the District Board stated, "[b]ecause [Collaborative's] proposal will not improve pupil learning, increase learning opportunities for all pupils and encourage the use of different and innovative teaching methods over that which already exist in the Souderton Area School District, nor is there a plan to hold the school accountable for meeting measurable academic standards, the legislative intent of the [CSL] has not been fulfilled."[4] (District Board's Findings of Fact, No. 70, R.R. at 558a.)

---

1. Act of March 10, 1949, P.L. 30, added by section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1701–A to 17–1732–A.

2. Section 1717–A(i)(9) of the CSL, 24 P.S. § 17–1717–A(i)(9), provides that a decision of the CAB to reverse a decision of the local board of school directors denying a charter school application shall serve as a requirement for the local board of directors to grant the application and sign the written charter of the charter school.

3. Collaborative proposes to operate a program that encompasses kindergarten through fifth grade in its first year and expand one grade each year of operation, until all twelve grades are included. (CAB's Findings of Fact, No. 8.)

4. In this regard, section 1702 A of the CSL provides:

It is the intent of the General Assembly, in enacting this article, to provide opportunities for teachers, parents, pupils and community members to establish and maintain schools that operate independently from the existing school district structure as a method to accomplish all of the following:
(1) Improve pupil learning.

In order to be eligible to appeal the District Board's denial, Collaborative obtained the requisite number of signatures on petitions pursuant to section 1717–A(i)(2) of the CSL.[5] Collaborative then presented a "Petition to Appeal" to the Montgomery County Court of Common Pleas (trial court) for a determination of the sufficiency of the signatures.[6] (R.R. at 585a–670a.) Following a hearing, on August 17, 1998, the trial court decreed that Collaborative's Petition to Appeal was sufficient on its face, (R.R. at 671a), and the Petition to Appeal was forwarded to the CAB.

By letter dated February 16, 1999, Ernest Helling, counsel for the CAB, acknowledged receipt of the trial court's August 17, 1998 decision initiating Collaborative's appeal with the CAB. In the letter, Helling informed counsel for Collaborative and counsel for the School District that Collaborative's Petition to Appeal had been filed but would be held in abeyance until all members of the CAB were appointed and the CAB commenced functioning under the CSL.[7] (R.R. at 826a–27a; *see also* R.R. at 828a–29a.) On June 30, 1999, Collaborative filed a separate "Petition for Appeal" with the CAB, allegedly pursuant to the Rules of Administrative Practice and Procedure, providing the reasons for Collaborative's appeal and the basis for its position. (R.R. at 807a–11a; *see also* R.R. at 834a.) Then, on July 1, 1999, the CAB held its first public meeting during which, among other things, it accepted receipt of Collaborative's Petition for Appeal and appointed a hearing officer to assist the CAB in the matter. On July 9, 1999, the District Board filed an Answer, New Matter and a Motion to Dismiss, accompanied by a supporting memorandum of law. (R.R. at 841a–70a.) On July 26, 1999, Collaborative responded to the District Board's New Matter and Motion to Dismiss, accompanied by a memorandum of law in opposition. (R.R. at 871a–77a, 878a–85a.) Following the parties' submission of briefs in support of their respective positions, the CAB heard oral argument on November 8, 1999.

■ On November 10, 1999, the CAB voted to reverse the Distict Board's De-

---

(2) Increase learning opportunities for all pupils.

(3) Encourage the use of different and innovative teaching methods.

(4) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site.

(5) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system.

(6) Hold the schools established under this act accountable for meeting measurable academic standards and provide the school with a method to establish accountability systems.

24 P.S. § 17–1702–A.

5. This subsection provides:

In order for a charter school applicant to be eligible to appeal the denial of a charter by the local board of directors, the applicant must obtain the signatures of at least two per centum of the residents of the school district or of one thousand (1,000) residents, whichever is less, who are over eighteen (18) years of age. . . .

24 P.S. § 17–1717–A(i)(2).

6. This was done pursuant to subsection 1717–A(i)(5) of the CSL, which provides:

If the required number of signatures are obtained within sixty (60) days of the denial of the application, the applicant may present the petition to the court of common pleas of the county in which the charter school would be situated. The court shall hold a hearing only on the sufficiency of the petition. . . . The court shall issue a decree establishing the sufficiency or insufficiency of the petition. If the petition is sufficient, the decree shall be transmitted to the State Charter School Appeal Board for review in accordance with this section. Notification of the decree shall be given to the applicant and the local board of directors.

24 P.S. § 17–1717–A(i)(5).

7. The District Board sent the certified record to the CAB on March 9, 1999. (R.R. at 89a–671a.) Pursuant to the CAB's May 27, 1999 request, the District Board sent additional documents for the certified record on June 9, 1999. (R.R. at 672a–791a.)

cember 18, 1997 decision, to grant Collaborative's charter and to deny the District Board's Motion to Dismiss. The CAB issued its written decision and order on December 23, 1999, basing that decision on its own findings of fact and conclusions of law made after an independent review of the District Board's findings and conclusions. (R.R. at 1066a–83a.) When the District Board failed to sign Collaborative's charter within ten days of the CAB's decision, Secretary Eugene Hickok, one of seven CAB members, signed Collaborative's charter on January 19, 2000. (R.R. at 1084a–85a.) *See* section 1717–A(i)(9) of the CSL, 24 P.S. § 17–1717–A(i)(9). On that same date, the School District filed its petition for review of the CAB's December 23, 1999 order with this court, (R.R. at 1086a–98a), and we now consider the various issues raised therein.[8]

A. Premature Appeal

■ The School District first argues that, because Collaborative's appeal was premature, the CAB erred in deciding that it had jurisdiction to review this case. The School District bases this argument largely on subsection 1717–A(f) of the CSL, which provides:

At the option of the charter school applicant, a denied application may be revised and resubmitted to the local board of school directors. *Following the appointment and confirmation of the Charter School Appeal Board under section 1721–A, the decision of the local board of school directors may be appealed to the appeal board .... No appeal*

*from a decision of a local school board may be taken until July 1, 1999.*

24 P.S. § 17–1717–A(f) (emphasis added). The School District argues that Collaborative filed its Petition to Appeal on February 16, 1999, before the appointment and confirmation of the CAB and before July 1, 1999. Therefore, the School District maintains that the CAB should have dismissed the appeal as premature, in direct violation of the CSL's clear terms and the General Assembly's intent to prohibit appeals during the two year period following enactment of the CSL. Further, the School District notes that, because the CAB was not yet operational on February 16, 1999, when counsel for the CAB acknowledged receipt and filing of Collaborative's Petition to Appeal, the CAB was unable to comply with sections 1717–A(i)(7) and (8) of the CSL, which required the CAB to review the certified record within thirty days and issue a written decision based on that review within sixty days. 24 P.S. §§ 17–1717–A(i)(7) and (8). Although recognizing that the CAB had Collaborative file a separate Petition *for* Appeal, which the CAB accepted on July 1, 1999, the School District contends that this subsequent filing was not envisioned under the CSL and, thus, was invalid. According to the School District, affected charter school applicants,[9] such as Collaborative, were not to suspend their appeals until formation of the CAB but, rather, were to proceed as if there were no provision for appeal to that body. Thus, the School District maintains that Collaborative's

---

**8.** In its appeal, the School District named both Collaborative and the CAB as parties; however, this court refused to join the CAB as a respondent in this case. (*See* R.R. at 1099a–1110a.) Because the CAB is the administrative agency charged with exclusive review of an appeal of a local school board decision not to grant a charter application, sections 1717–A(h), 1717–A(i)(1) of the CSL, 24 P.S. §§ 17–1717–A(h), 17–1717–A(i)(1), this court's scope of review is appellate. Section 1717–A(i)(10) of the CSL, 24 P.S. § 17–1717–A(i)(10). Therefore, we shall affirm the CAB's determination unless this court deter-

mines that the adjudication is in violation of constitutional rights, or is not in accordance with law, or is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Shenango Valley Regional Charter School v. Hermitage School District and Sharon City School District*, 756 A.2d 1191 (Pa.Cmwlth.2000).

**9.** Affected applicants are those whose appeals would ordinarily be taken prior to July 1, 1999, based on the date of the application denial.

remedy was to resubmit its Application to the District Board pursuant to section 1717–A(f) of the CSL, 24 P.S. § 17–1717–A(f), or to take a timely appeal to the Court of Common Pleas under the Administrative Code and Pennsylvania Rules of Judicial Procedure. Indeed, the School District contends that to permit the CAB to review Collaborative's appeal would result in a retroactive application of the CSL, in contravention of the Statutory Construction Act and Pennsylvania law. *See* 1 Pa.C.S. § 1926.

On the other hand, Collaborative contends that the CAB properly decided not to dismiss Collaborative's appeal as premature. Collaborative maintains that the legislature did not intend to preclude appeals from affected applicants but merely intended to suspend them until July 1, 1999, when the CAB would assume its exclusive jurisdiction to review such appeals. *See* section 1717–A(i)1, 24 P.S. § 17–1717–A(i)1.[10] We agree.

In fact, this precise issue was fully considered and decided in our recent opinion in *West Chester Area School District v. Collegium Charter School,* 760 A.2d 452 (Pa.Cmwlth.2000). In *Collegium,* we recognized that appeals to the CAB may not be taken *until* July 1, 1999; however, we noted that nothing in the CSL eliminates the statutory grant of the right to appeal for applicants whose appeals would ordinarily be taken prior to July 1, 1999. Therefore, we held that the CAB properly interpreted the CSL as delaying, rather than extinguishing, an applicant's right to appeal the denial of a charter by the local

school board within the two-year moratorium period imposed by the CSL. Because nothing in this case warrants a different result, our decision in *Collegium* controls and requires the conclusion that the CAB acted properly in considering Collaborative's appeal.

**B. The CAB's Standard of Review**

■ The School District next argues that the CAB erred when it failed to apply the necessary appellate standard of review to the District Board's denial of Collaborative's charter school application.[11] The School District bases this argument on subsection 1717–A(i)(6) of the CSL, which provides:

> In any appeal, the decision made by the local board of directors shall be reviewed by the appeal board on the record as certified by the local board of directors. The appeal board shall give **due consideration** to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision. The appeal board shall have the discretion to allow the local board of directors and the charter school applicant to supplement the record if the supplemental information was previously unavailable.

24 P.S. § 17–1717–A(i)(6) (emphasis added).

The School District argues that the requirement to give "due consideration" to the findings of the local board places the CAB in an appellate role.[12] According to

---

**10.** Further, Collaborative disputes the School District's claim that the CAB failed to act within thirty days of accepting Collaborative's appeal. Collaborative points out that it filed both a Petition *to* Appeal with the trial court and a Petition *for* Appeal with the CAB. According to Collaborative, although the CAB acknowledged receipt of the Petition to Appeal on February 16, 1999, the CAB did not accept Collaborative's Petition for Appeal until July 1, 1999. Finally, Collaborative contends that there is no retroactivity problem created here because all the actions challenged by the School District occurred *after*

enactment of the CSL. Thus, the CSL does not relate back to give these actions a legal effect different from that which they had under the law in effect at the time they took place.

**11.** The Pennsylvania School Boards Association has submitted an amicus brief making this same argument.

**12.** As further support for this position, the School District refers to section 1717–A(g) of the CSL, which provides for the CAB to exercise original jurisdiction where the local

the School District, under this standard of review, the CAB cannot substitute its discretion for that of the District Board but, rather, must give great deference to the District Board's findings and uphold the District Board's determination if it is supported by substantial evidence in the record. The School District claims that the CAB here failed to give due consideration to the District Board's findings and did not prove that the District Board's decision was unsupported by the evidence.[13] In essence, the School District argues that, had the CAB utilized the appropriate standard of review, it would have had to affirm the District Board's determination that Collaborative's Application failed to satisfy

both the CSL's requisite criteria[14] and the additional factors considered by the District Board.[15] We disagree.

■ Once again, this issue is controlled by our decision in *Collegium*, in which we considered the question of the proper standard of review for the CAB. In that case, based on the plain language of subsection 1717–A(i)(6) of the CSL[16] and due process requirements for an independent and impartial factfinder at some stage of the proceedings,[17] we held that the CAB did not err in conducting *de novo* review over appeals from charter denials by local school boards even when the CAB fails to conduct a *de novo* hearing.[18] In reaching

school board fails to hold a hearing and grant or deny a charter application. 24 P.S. § 17–1717–A(g). The School District asserts that this original jurisdiction section must be contrasted to section 1717–A(i)(6) of the CSL, applicable here, under which the CAB must act as an appellate body.

13. After considering the District Board's findings and conclusions, the CAB concluded that the denial of Collaborative's charter was improper because "[i]n some instances, the bases for denial were not criteria upon which the legislature intended an applicant to be judged. In other instances, the [D]istrict [Board] rejected evidence presented by [Collaborative] but did not present any evidence to contradict [Collaborative's] evidence." (CAB op. at 1.)

14. Section 1717–A(e)(2) of the CSL provides:

A charter school application submitted under this article shall be evaluated by the local board of school directors based on criteria including, but not limited to, the following:

(i) The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing held under subsection (d).

(ii) The capability of the charter school applicant, in terms of support and planning, to provide comprehensive learning experiences to students pursuant to the adopted charter.

(iii) The extent to which the application considers the information requested in section 1719–A and conforms to the legislative intent outlined in section 1702–A.

(iv) The extent to which the charter school may serve as a model for other public schools.
24 P.S. § 17–1717–A(e)(2).

15. In addition to the CSL's specifically enumerated criteria, the District Board evaluated Collaborative's charter Application based on the fiscal impact of the charter school on the School District. The School District notes that, under section 1717–A(e)(2) of the CSL, 24 P.S. § 17–1717–A(e)(2), the District Board is permitted to establish additional criteria to judge the adequacy of charter school proposals, and it is only reasonable to assume that this includes consideration of financial criteria because the School District is accountable to taxpayers.

16. "[Section 1717–A(i)(6)] explicitly directs that the CAB **'specifically articulate its reasons for agreeing or disagreeing'** with the findings of the local board of directors. By giving the CAB the right to disagree with the local school board and requiring it to specifically articulate its reasons for doing so, the General Assembly has unquestionably granted the CAB the authority to substitute its own findings and independent judgment for that of the local school board." *Collegium*, 760 A.2d at 461 (emphasis in original).

17. *See Belasco v. Board of Public Education*, 510 Pa. 504, 510 A.2d 337 (1986).

18. In this regard, we point out that, unlike the situation in *Collegium*, the CAB in this case, acting pursuant to 24 P.S. § 17–1717–A(i)(6), requested additional information from Collaborative that was not presented to the District Board. (R.R. at 672a–791a.) Clearly, the

this conclusion, we rejected the argument that the CSL's "due consideration" language limited the CAB to an abuse of discretion standard. Rather, we determined that use of the term "due consideration" merely required the CAB to give **appropriate** consideration to the local school board's findings, but it did not mandate a particular standard of review. Because nothing in the School District's repetition of this previously considered argument persuades us to alter the determination made in *Collegium,* we hold that the CAB here did not err in conducting *de novo* review of the District Board's decision.[19]

### C. CAB's Execution of Its Duties and Functions

Finally, the School District argues that the CAB is expected to comply with the CSL and establish rules for its operation. 24 P.S. § 17–1721–A. Citing the need for safeguards to prevent the arbitrary, capricious or discriminatory exercise of discretionary authority, the School District maintains that regulations outlining minimum standards for charter schools and school districts should have been promulgated to shield against the CAB's improper use of uncontrolled power. The School District then cites eleven examples of the CAB's alleged arbitrary execution of its duties.[20] (*See* School District's brief at 18–20.)

▆▆▆▆ Initially, we point out that, whereas the CAB "is authorized to establish rules for its operation," 24 P.S. § 17–1721–A(b), the CSL does not *require* the CAB to promulgate any such rules. Of course, this does not mean that the CAB is free to ignore statutory requirements, and, thus, we have carefully considered each of the School District's eleven examples of alleged arbitrary action by the CAB. Having done so, we now address the only one of these eleven examples that appears to set forth a valid concern.[21]

CAB would be obliged to consider this evidence under a *de novo* standard.

19. Because it is the CAB, not the District Board, that is the factfinder in an appeal from a charter school application denial, we need not consider the School District's argument that the CAB failed to prove that the District Board's decision was not supported by substantial evidence. *See Collegium.*

20. In its brief, Collaborative does not respond to the School District's allegations but, instead, expends considerable effort arguing that the School District should be deprived of its right to allege that the CAB acted arbitrarily in the exercise of its duties and functions. Specifically, Collaborative asserts that the doctrine of unclean hands applies to deprive the School District of any relief where the School District, to Collaborative's detriment, is guilty of bad conduct relating to the matter. (*See* Collaborative's brief at 2–5, 11–15.) However, after fully considering Collaborative's contention, we disagree that the doctrine of unclean hands applies in this case.

21. Three of the ten remaining examples are discussed, and rejected, elsewhere in this opinion; they include the School District's contention that the CAB executed its duties in an arbitrary fashion (1) by accepting Collaborative's appeal prematurely, (2) by adding a "perfected Petition for Appeal" under the Administrative Rules of Practice and Procedure to the appeal process under the CSL, and (3) by failing to apply an appellate "due consideration" standard of review when examining appeals. As with these three examples, we also reject the School District's seven other claims of arbitrary action by the CAB, based on the following reasoning:

(1) The School District contends that the CAB formulated and adopted surprise procedural rules to regulate charter school appeals without prior public comment or notice. Specifically, the School District argues that the CAB's adoption of procedural rules at its July 1, 1999 meeting was the fourth version of these rules since January 1998, (*see* R.R. at 817a–25a for the prior three versions), and that the final version was improperly adopted without prior public comment or notice. However, although the three contain slight variations in language, we see no substantive difference in any of the three versions of the procedures posted on the Department's website; moreover, all three versions seem to track the language of the CSL. Further, the website contains a disclaimer explaining that the material merely represents an attempt to describe the appeal process and does not contain rules adopted by the CAB. We also disagree that the CAB violated section 1721–A(e) of the CSL, 24 P.S. § 17–1721–A(e), when it adopted its rules on July 1, 1999. That sec-

■ The School District maintains that the CAB acted arbitrarily and in violation of the CSL by determining that charter school facilities do not have to be reviewed and approved by the District Board prior to the school's opening. The School District bases its claim on the language of the CAB's order, which directs the District Board to sign Collaborative's charter and then states: "In addition, prior to opening the charter school, the Collaborative shall provide the School District and the CAB with information regarding the facility to be used for the charter school." (CAB order, R.R. at 1083a.) The School District notes that section 1719–A(11) of the CSL requires that "[a]n application to establish a charter school shall include all of the following information: ... (11) A description of and address of the physical facility in which the charter school will be located

tion of the CSL requires only that the CAB's meetings be conducted under the Sunshine Act, which was done; it does not require *prior* public notice or comment. Clearly, the School District did get to express its concerns at the July 1, 1999 CAB meeting. (*See* R.R. at 812a–16a.)

(2) The School District maintains that the CAB adopted rules of administrative practice and procedure that conflict with the CSL. However, the General Rules of Administrative Practice and Procedure are applicable to all proceedings before Commonwealth agencies unless (1) the applicable governing statute sets forth inconsistent rules on the same subject, or (2) the agency has promulgated inconsistent regulations on the same subject. 1 Pa.Code § 31.1. Neither exception applies here.

(3) The School District alleges that the CAB violated section 1721–A(e) of the CSL, 24 P.S. § 17–1721–A(e), because it possesses secret documents unavailable to school districts, specifically, a hearing officer's handbook that school districts were not permitted to see despite the fact that the CAB is subject to the Sunshine Act and the Right to Know Law. We cannot locate the handbook in the record here, and the CAB did not address this allegation of error; therefore, we cannot respond except to question whether such a handbook constitutes a "document" of the CAB as that term is meant in the CSL section at issue.

(4) The School District contends that the CAB erred in failing to develop a form to be used to petition for appeal to that body, in violation of 24 P.S. § 17–1717–A(i)(3) requiring the department to develop such a form. However, the only reference to a form to be developed by the Department in found in section 1717–A(i)(3) of the CSL, 24 P.S. § 17–1717–A(i)(3), which relates to the petition for an appeal to be filed with the court of common pleas. The CSL includes no directive regarding creation of a form to be used in an appeal to the CAB.

(5) The School District asserts that the CAB's appointment of a hearing officer to an appeal case is an invalid delegation of the CAB's authority. However, the General Rules of Administrative Practice and Procedure specifically provide for the appointment of hearing examiners for the purpose of developing a record of proceedings and allows for the appointment of "examiners" when evidence is to be taken in a proceeding. 1 Pa.Code § 35.185. The CSL specifically provides for supplementation of the record, which may involve the taking of additional evidence. 24 P.S. § 17–1717–A(i)(6). Finally, the CAB did not delegate any of its decision making authority to the hearing examiner; rather, the hearing examiner's role is simply to certify the record to the CAB, and the CAB retains its obligation under the CSL to decide the matter.

(6) The School District argues that when the CAB approved Collaborative's appeal with a modification, the CAB violated sections 1717–A(i)(8) and (9) of the CSL, sections which require the CAB to either affirm or deny the appeal without granting authority to modify the charter application. Although the CSL does not appear to make any provision for the CAB to modify a charter, it does not expressly forbid such action. We observe, however, that the only "modification" we can discern in the CAB's opinion is in connection with the facility that would be housing the charter school. Assuming that this is the "modification" to which the School District objects, we note that the CAB does not modify the facility as presented in the Application; rather, the CAB simply points out the very real possibility that, because Collaborative's plan is more than two years old, that facility may no longer be available. The CAB then points out the obvious, that Collaborative may not begin operation without a facility.

(7) The School District maintains that the CAB's order is invalid because the CAB failed to vote to approve the opinion and order, written by counsel for the CAB, before issuing it with Secretary Eugene Hickok's signature. Clearly, the CAB voted to grant Collaborative's appeal and voted to deny the School District's motion to dismiss. (*See* CAB op. at 18 n. 1 and 2.) It is not clear that the CSL also requires the CAB to vote to approve the written opinion.

and the ownership thereof and any lease arrangements." 24 P.S. § 17–1719–A(11). According to the School District, because this order requires the District Board to grant Collaborative's charter without ever viewing the proposed school site, it violates section 1719–A(11) of the CSL. We can understand why the School District makes this argument, and *if* the School District's interpretation of the CAB's order were correct, we would agree that the CAB contravened section 1719–A(11) of the CSL. However, we believe the School District has misinterpreted the CAB's intent.

In the charter school Application submitted to the District Board, Collaborative indicated that the proposed school initially would be housed in a building located in a strip mall (Strip Mall Facility). In this regard, the District Board found that the short-term Strip Mall Facility that Collaborative planned to use was totally inappropriate and posed a substantial risk to the safety and welfare of students. The CAB disagreed [22] and then made the following observation:

> It must be noted that the plan incorporating these elements is, today, more than two years out of date. It is questionable whether, at this point in time, the Collaborative will be able to simply go back to the proposed facility and pick up where it left off. *However, the CAB is to review the decision of the local board of directors on the record certified by the local board and evidence of a facility was presented to the School District in the Collaborative's application and this facility was available at the time of [District] Board action on the application.* Therefore, the Collaborative's application was acceptable at the

time it was submitted and acted upon, and thus does not constitute a basis for the denial of the appeal. However, the Collaborative obviously must have a facility before it can begin operating.

(CAB op. at 14–15, R.R. at 1079a–80a.) (Emphasis added.) Finally, the CAB went on to distinguish Collaborative's Application from one which failed to provide *any* information on a facility. The CAB concluded that, whereas "[f]ailure to provide any such information prior to the school district's vote [is a proper] basis for the CAB affirming the school district's denial of the charter, ... the Collaborative provided enough information about the proposed facility to meet the requirements of the [CSL]." (CAB op. at 15, R .R. at 1080a.)

Thus, in its opinion, the CAB simply points out the very real possibility that, because Collaborative's Application is more than two years old, the Strip Mall Facility that was to house the charter school may no longer be available. Despite this realization, the CAB recognized that, in ruling on Collaborative's appeal, the CAB only could review the suitability of the Strip Mall Facility presented in the Application. Having determined that this Strip Mall Facility was available and acceptable *at the time the Application was submitted,* the CAB could not deny Collaborative's appeal based on the possibility that this particular facility might not be available currently.

Viewing the CAB's order in light of the reasoning set forth in its opinion, it becomes apparent that, in directing the District Board to sign Collaborative's charter

---

**22.** Specifically, the District Board determined that the classroom space was too small, the site was inaccessible to school buses and the playground area was inadequate and unsafe because it could be reached only by traversing a well-used parking lot. In dealing with these District Board findings, the CAB recognized that a charter school facility is exempt from regulations applicable to public schools ex-

cept as it relates to the health and safety of students. Section 1722–A(b) of the CSL, 24 P.S. § 17–1722–A(b). The CAB then found that there was no testimony that the small classroom size created health and safety concerns. Further, the CAB noted that provision for bus access and alternate land for recreation had been arranged. (CAB op. at 13–14, R.R. at 1078a–79a.)

school Application, the CAB refers *only* to the Application including the Strip Mall Facility.[23] The final sentence of the CAB's order merely reflects the CAB's recognition of a possible problem with the Application's listed facility. Thus, the CAB directs Collaborative to inform the School District and the CAB in the event that Collaborative would need to use a different facility. In this way, the School District and the CAB would be aware that Collaborative would have to submit a new application to the District Board and afford the District Board an opportunity to consider whether the facility is appropriate under the CSL. *See* section 1722–A(b) of the CSL, 24 P.S. § 17–1722–A(b). Clearly, application of this reasoning satisfactorily addresses the School District's concern that it would have to grant Collaborative's charter school Application without a review of the suitability of the school site. 24 P.S. § 17–1722–A.

Accordingly, having found that the CAB did not err in its decision, we affirm.

### ORDER

AND NOW, this 29th day of December, 2000, the order of the State Charter School Appeal Board, dated December 23, 1999, is hereby affirmed.

---

**23.** Although the CAB order requires Collaborative to provide information regarding the facility to be used "prior to opening the charter school," the CAB clearly intended that Collaborative actually provide this information prior to the District Board's grant of the Application. That is, the District Board would be required to sign Collaborative's charter only if the Strip Mall Facility remained available.