**SCHOOL DISTRICT OF THE CITY OF YORK, Petitioner,**

v.

**LINCOLN–EDISON CHARTER SCHOOL, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 2, 2001.

Decided April 30, 2001.

Gregory H. Gettle, York, for petitioner.

Daniel M. Fennick, York, for respondent.

Jeffrey D. Litts, New Cumberland, for amicus curiae, Pa. School Boards Assoc.

Before DOYLE, President Judge, PELLEGRINI, Judge, LEDERER, Senior Judge.

PELLEGRINI, Judge.

The School District of the City of York (School District) petitions for review of an order of the State Charter Appeal Board (Board) reversing its decision to deny Lincoln–Edison Charter School's (Lincoln–Edison) charter school application.[1]

On November 15, 1999, Lincoln–Edison, a Pennsylvania non-profit corporation, submitted a charter school application to the School District seeking to convert Lincoln Elementary School pursuant to the Charter School Law (Law).[2] Upon filing its application, Lincoln–Edison disclosed its intention to enter into a management agreement under which Edison Schools, Inc. (Edison), a for-profit corporation, would provide the school with educational and administrative services.

After hearing testimony at a public hearing on January 13, 2000, and during a regularly scheduled meeting on March 15, 2000, the School District voted seven-to-one to deny the charter school application.

---

1. In addition to reversing the School District's denial of the charter school application, the Board also directed the School District to grant Lincoln–Edison's application and sign Lincoln–Edison's charter.

2. Act of March 10, 1949, P.L. 30, added June 19, 1997, P.L. 225, 24 P.S. §§ 17–1701–A 17–1732–A.

In its April 3, 2000 letter to Lincoln–Edison, the School District cited 25 reasons for the denial.[3] After facially securing the requisite number of signatures to appeal the School District's denial as required by Section 1717–A(i)(2) of the Law,[4] Lincoln–Edison then submitted a petition to appeal to the York County Court of Common Pleas (trial court) for a determination of the sufficiency of the signatures. By decree dated May 10, 2000, the trial court held that the petition was sufficient, and on May 12, 2000, Lincoln–Edison filed its appeal with the Board.[5]

---

3. In its April 3, 2000 letter, the School District denied Lincoln–Edison's charter school application for the following reasons: (1) inadequate financial analysis and financial budget for the operation of the Charter School; (2) lack of demonstrated sustainable support by teachers, parents and particularly community members; (3) the questionable relationship between the applicant and Edison Schools, Inc.; (4) the structure and selection process for the selection of Trustees for the Charter School Board; (5) failure to address programs for gifted students; (6) the By Laws permitting meetings of the Charter School Board by telephone instead of requiring in-person meetings; (7) control of the Charter School by Edison Schools, Inc., a for-profit entity; (8) the recruitment by Edison Schools, Inc., a for-profit entity, of individuals to request a Charter School which will benefit Edison Schools, Inc.; (9) the application of grant income/revenues for the benefit of Edison Schools, Inc., a for-profit entity; (10) due to the proposed relationship between the applicant and Edison Schools, Inc., and the control to be exercised by Edison Schools, Inc., the Charter would be granted to a for-profit entity which is not permitted; (11) lack of connection between the proposed Trustees with the community and the School District; (12) lack of parents and community members involved with the governance of the Charter School; (13) failure to provide for the submission of an annual report to the School District describing the extent to which the Charter School is meeting its goals; (14) failure to provide sufficient student discipline policy and expulsion criteria; (15) failure to provide for homebound instruction for expelled students; (16) failure to make a commitment to enroll students for a 1 year period; (17) lack of evidence of parental and community organizations involved in the planning process of the Charter School, as evidenced, in part, by testimony at the public hearing and in narrative in the application; (18) No 3 year financial plan for the Charter School which follows guidelines for budget development in the Commonwealth of Pennsylvania; (19) lack of budget statement showing the minimum number of students needed for the Charter School to remain financially viable; (20) procedures for complaints by students, parents and employees is primarily through Edison Schools, Inc., instead of the Charter School Board and/or the Charter School Board Administration; (21) insufficient leasing arrangement and maintenance plans for the school building and grounds; (22) insufficient evidence of the number of certified and non-certified staff and the qualifications for non-certified staff; (23) the open-ended arrangement that any excess revenues over expenditures will be paid to Edison Schools, Inc., a for-profit entity, as compensation, regardless of whether such excess revenue is reasonable or excessive; (24) the nature, extent and control of Edison Schools, Inc., a for-profit entity, in the hiring and firing of personnel and the possibility of stock option in Edison Schools, Inc., being given to staff (possible conflict of interest between students needs and profitability of Edison Schools, Inc.); and (25) the application has failed to provided that the Board of Trustees of the Charter School shall be solely liable for any and all damages of any kind concerning the operation of the Charter School and that the School District of the City of York shall not be held liable.

4. To be eligible to appeal the denial of a charter by the local board of directors, the applicant must obtain the signatures of at least two per centum of the residents of the school district or of 1,000 residents, whichever is less, who are over 18 years of age.

5. On May 15, 2000, the School District filed a petition with the Board requesting that it not consider the appeal filed by Lincoln–Edison. Then, at oral argument before the Board on June 15, 2000, the School District withdrew its petition to dismiss the appeal. However, the School District subsequently refiled the petition.

Before the Board, Blanche Frasier, regional vice president for development for Edison, stated that the management agreement attached to Lincoln–Edison's charter application which was considered by the School District was merely a "model" agreement and that Lincoln–Edison and Edison were in the process of negotiating the final management agreement. Concluding that Lincoln–Edison's charter application demonstrated sustainable support for the charter school plan by teachers, parents, other community members and students, Lincoln–Edison's ability to provide a comprehensive learning experience to its students and the application provided sufficient information and conformed to the legislative intent of the Law, the Board reversed the determination of the School District and ordered it to grant Lincoln–Edison's charter. This appeal followed.[6]

Initially, the School District contends that the Board failed to apply the proper scope of review. It argues that the Board erred in conducting a *de novo* review and permitting Lincoln–Edison to offer evidence that was not presented before the School District in violation of Subsection 1717–A(i)(6) of the Law, which provides:

> In any appeal, the decision made by the local board of directors shall be reviewed by the appeal board on the record as certified by the local board of directors. The appeal board shall give due consideration to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision. The appeal board shall have the discretion to allow the local board of directors and the charter school applicant to supplement the record if the supplemental information was previously unavailable.

24 P.S. § 17–1717–A(i)(6).[7]

Whether the Board is entitled to conduct a *de novo* review of a school district's denial of a charter application was recently addressed by this Court in *West Chester Area School District v. Collegium Charter School,* 760 A.2d 452 (Pa.Cmwlth. 2000). In that case, we held that based on the plain language of subsection 1717–A(i)(6) of the Law that gives the Board discretion to change the local school board findings and due process requirements for an independent and impartial factfinder at some stage of the proceedings, a *de novo* review was the appropriate scope of review from appeals of charter denials by local school boards. *See also Souderton Area School District v. Souderton Charter School Collaborative,* 764 A.2d 688 (Pa. Cmwlth.2000). Based on our decisions in *Collegium* and *Souderton,* as based on the clear language of subsection 1717A(i)(6), the Board did not err in conducting a *de novo* review of the School District's denial of the charter application or allowing Lincoln–Edison to present additional evidence to that already presented before the School District.

The School District also contends that Lincoln–Edison is not entitled to a

---

**6.** Because the Board is the administrative agency charged with exclusive review of an appeal of a local school board decision not to grant a charter application, our review is appellate. Therefore, we shall affirm the Board's determination unless we find that the adjudication violates constitutional rights, is not in accordance with the law, or is not supported by substantial evidence. *Shenango Valley Regional Charter School v. Hermitage*

*School District,* 756 A.2d 1191 (Pa.Cmwlth. 2000).

**7.** Because the negotiations were ongoing subsequent to the School District's hearings on Lincoln–Edison's charter application, presumably, the testimony presented by Frasier to which the School District objects was not available at the time of those hearings.

charter because it failed to establish demonstrated and sustainable support for the charter school as required by Section 1717–A(b)(2) of the Law. That section provides:

In order to convert an existing public school to a charter school, the applicants must show that:

(1) More than fifty per centum of the teaching staff in the public school have signed a petition in support of the public school becoming a charter school; and

(2) More than fifty per centum of the parents or guardians of pupils attending that public school have signed a petition in support of the school becoming a charter school.

24 P.S. § 17–1717–A(b)(2). Although it does not argue that there was an insufficient number of signatures, it contends that the petitions were insufficient because they did not include the addresses of the signers and did not disclose how many of the signers were parents or guardians of the students attending Lincoln Elementary School. In its application, Lincoln–Edison provided petitions labeled as "Parents" and others labeled "Teaching Staff." If the School District believed that the individuals who signed the petitions were not parents of children attending Lincoln Elementary School or the teachers who signed the petitions were not members of its teaching staff, once the petitions were presented, the burden was on the School District to prove otherwise. This is not an onerous burden because of the limited number of parents and teachers, and the records of who attends and teaches at the school were within the School District's control. Moreover, the petitions were not defective on their face because the addresses of the signators were not provided because nothing in the Law requires that an applicant provide the individual signers' addresses on the petitions. Accordingly, nothing establishes that Lincoln–Edison did not have the support as required under Section 1717 A(b)(2) of the Law.

■ The School District also argues that Lincoln–Edison is not eligible for a charter because under the management agreement submitted by Lincoln–Edison with its charter application, the charter school's board of trustees fails to retain real and substantial authority of the charter school as required by Section 1716–A of the Law, and the teachers at the charter school would be *de facto* employees of Edison in violation of Sections 1716–A and 1724–A of the Law.[8]

---

8. Those sections provide, in relevant part:

The board of trustees of a charter school shall have the authority to decide matters related to the operation of the school including, but not limited to, budgeting, curriculum and operating procedures, subject to the school's charter. The board shall have the authority to employ, discharge and contract with necessary professional and nonprofessional employes subject to the school's charter and the provisions of this article.
24 P.S. § 17–1716–A(a).
The board of trustees shall determine the level of compensation and all terms and conditions of employment with the staff except as may otherwise be provided in this article. At least seventy-five per centum of the professional staff members of a charter school shall hold appropriate State certification. Employes of a charter school may organize under the act of June 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act." The board of trustees of a charter school shall be considered an employer for the purposes of Article XI A. Upon formation of one or more collective bargaining units at the school, the board of trustees shall bargain with the employes based on the provisions of this article, Article XI A and the "Public Employe Relations Act." Collective bargaining units at a charter school shall be separate from any collective bargaining unit of the school district in which the charter school is located and shall be separate from any other collective bargaining unit. ...

Whether Lincoln–Edison's board of trustees retained sufficient control vis-à-vis Edison is determined by the management agreement that those parties execute. The management agreement upon which the Board based its decision, however, was only a "model" management agreement, not the final and binding agreement between Lincoln–Edison and Edison.[9] As Lincoln–Edison stated before the Board, at that late date it was still in the process of negotiating the management agreement with Edison and admitted that many changes had already been made to the model management agreement submitted to School District. The Board only approved the charter application after Lincoln–Edison represented that its board of trustees would not sign something it felt to be inappropriate or unfair. While that may be true, for the Board to have properly considered this matter or this Court to conduct appropriate appellate review, it is necessary to have a finalized version of the agreement to review because it is impossible to determine whether the charter application comports with the requirements of the Law when integral parts of the application are not finalized. Because proper review of a charter application cannot be had until the essential components

of the application, such as a management agreement, are before the Board, the Board cannot grant a charter based on a "model" agreement or promises that after negotiations it will comply with the law. Otherwise, the Board could grant a charter on the basis of a "model" agreement that may be in conformity with the law while the actual agreement that is executed is not.

Because the management agreement upon which the Board granted Lincoln–Edison's charter application was only a "model" management agreement and not an agreement Lincoln–Edison and Edison proposed to enter into if the application was granted, the Board erred in granting the charter based upon the terms of that agreement. Accordingly, the decision of the Board is vacated and the matter is remanded for a hearing before the Board to determine whether a charter should be granted based on the final management agreement.[10]

## ORDER

AND NOW, this 30th day of April, 2001, the order of the Charter Appeal Board, No. CAB 2000–11, dated July 25, 2000, is vacated and the matter is remanded for a

24 P.S. § 17–1724 A(a).

9. At oral argument, it was represented that Lincoln–Edison and Edison have entered into a final management agreement but it was not before the Board.

10. The School District also contends that Lincoln–Edison is not entitled to a charter because it failed to prove that it has made or can make lease arrangements to use the Lincoln Elementary School Building as required by Section 1710–A(11) of the Law. In opposition, Lincoln–Edison and the Pennsylvania Department of Education *amicus curiae* contend that upon receiving a charter as a conversion charter school, Lincoln–Edison was entitled to occupy the building without payment of rent to the School District for the use

of the building. Because we hold that the Board erred in granting Lincoln–Edison a charter based on the "model" management agreement, we need not address that issue.

The School District also contends that granting a charter to Lincoln–Edison is inconsistent with its obligations under the Education Empowerment Act (EEA), Act of March 10, 1949, P.L. 30, *added* by the Act of May 10, 2000, P.L. 44, 24 P.S. §§ 17–1701–B—17–1716–B, because it will make it more difficult to improve PSSA scores as Lincoln Elementary School was the highest scoring school in the district. If anywhere, that issue can be considered in a challenge if the Secretary of Education plans to implement a Board of Control.

hearing before the Board to determine whether Lincoln–Edison Charter School's charter application should be granted on the basis of its final management agreement with Edison Schools, Inc.

Jurisdiction relinquished.