**MONTOUR SCHOOL DISTRICT,**
Petitioner

v.

**PROPEL CHARTER SCHOOL–
MONTOUR, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2005.

Decided Jan. 4, 2006.

Gregory Gleason, Pittsburgh, for petitioner.

Alan T. Shuckrow, Pittsburgh, for respondent.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Montour School District (District) petitions for review of an order of the State Charter School Appeal Board (CAB) which reversed the District's decision to deny a charter application to Propel Charter School—Montour (Propel), and directed the District to grant Propel's charter application and to sign the charter pursuant to Section 1720–A of the Charter School Law (CSL).[1]

"The General Assembly went to great lengths to permit the establishment of charter schools that operate independently

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 17–1720–A, added by Section 1 of the Act of June 19, 1997, P.L. 225.

from the existing school district structure in order to improve pupil learning and to encourage the use of innovative teaching methods." *Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 572 Pa. 191, 200, 813 A.2d 813, 818 (2002). To this end, on November 14, 2003, Propel submitted an application to operate a charter school in the District. Propel's purpose is to provide innovation by utilizing a small school/class size plan [2] and an extended instructional day/school year; [3] frequent assessments of student progress and needs; a core studies program in mathematics, writing, reading, social studies and science; individualized reading instruction; and, a music and arts program drawing on community resources in the Pittsburgh area. (R. 6–10, pp. 4, 12–14.) In addition, Propel intends to instruct students in flexible groups with differing levels of attainment to meet the individual and social needs of each child. *Id.* p. 31. The application proposed to lease a facility in the school district located at 5400 Campbell's Run Road–Building III (Proposed Facility) and provided a letter of intent/interest from the owner's representative noting that various approvals, including zoning changes, would need to be secured prior to finalization of any lease. *Id.* pp. 65–66.

2. A target of 20 students per class in grades K–4.

3. The plan involves a full-day Kindergarten and more time for learning with 190 days of school and 6 hours of instruction each day.

4. Propel filed a petition in the Court of Common Pleas of Allegheny County to certify the appeal to CAB, which was granted on June 25, 2004. On July 19, 2004, Propel filed a Petition to Appeal with CAB. On August 9, 2004, the District filed an answer and CAB delegated the matter to a hearing officer for the purpose of hearing and certification of the record to CAB. On August 20, 2004, the hearing officer issued a letter setting a pre-hearing conference, which was held on August 25th.

Public hearings were held on the application in which Propel submitted: petitions of support containing 194 signatures, *id.* pp. 219–54; letters of support from residents, foundations and elected officials, *id.* pp. 255, 289–300; and, additional documents and information concerning the proposed facility and Propel personnel, *id.* pp. 209–59. Propel informed the District that, as of January 30, 2004, it had received 129 applications from children for enrollment in September 2004, and it provided the District with additional data regarding community support and interested parents. (R. 6–10, pp. 268–86.) As of February 16, 2004, Propel had received applications from parents indicating that 196 children would enroll, and it projected an initial enrollment of 300 students in grades K–6, adding grades 7 and 8 in subsequent years to reach a maximum enrollment of 400. *Id.* pp. 5, 301.

On February 19, 2004, by an 8–1 vote, the District denied the application based on a lack of demonstrated sustainable support, failure to demonstrate an innovative curriculum, and failure of the application to include specific information concerning the leasing and renovation of the Proposed Facility. Propel then followed the procedures required to appeal the denial to CAB.[4]

The hearing officer issued a scheduling order establishing the times for filing the record below, making requests to supplement the record below and filing briefs. Propel and the District waived a hearing before the hearing officer at this time.

On September 15, 2004, the District filed the certified record. Propel filed an objection to the certified record, asserting that the record did not include the minutes from a February 6, 2004 school board meeting. The District responded that no minutes were taken at that meeting, which was not a regularly scheduled school board meeting. Oral argument on the appeal was heard by CAB at its meeting of September 28, 2004.

At oral argument before CAB on September 28, 2004, Propel informed the District and CAB that it had learned, within the previous week, that the Proposed Facility was no longer available and so Propel was pursuing a lease for another facility which would require improvements and zoning changes to be used as a charter school. The District objected to the submission of any evidence regarding a new proposed facility, and CAB agreed that the new evidence would not be submitted. (9/28/04 CAB hearing, Test. at 11–12.)

On February 28, 2005, CAB issued its order and opinion, which reversed the District's decision and ordered it to grant the application and sign the charter. First, CAB held that the application demonstrated sustainable support. The purpose of demonstrating sustainable support is to show that the school has a reasonable likelihood of operating according to its plan over the period of the charter. The CSL does not require the applicant to provide detailed information of parents who intend to enroll their children in the charter school, and to require the verifiable personal data suggested by the District—ie., the date, time and place where the signatures were collected—because it would thwart the intent of the Legislature and discourage, rather than encourage, the development and support for charter schools.

Second, CAB held that Propel's school design, academic assessment plans, and planned instructional programs would provide a unique combination of programs to satisfy the CSL. Propel's application indicated the school would 1) provide comprehensive learning experiences to students by establishing a detailed description of its mission and school plan to provide excellence in core academic disciplines, 2) devel-op community awareness, and 3) provide students with the opportunity to acquire expertise in the arts, music and language. CAB noted that it had made similar assessments with regard to other applications by Propel. (CAB Decision at 13.)

Third, CAB held that, at the time of the application and the decision of the school board, Propel's Proposed Facility was adequate under the CSL. The CSL does not require a detailed facility plan and the Legislature intended the CSL to be liberally interpreted; thus, the Legislature could not have intended, as a condition of approval of a charter, that all necessary elements of the school's physical location be established. Therefore, CAB did not believe that it was necessary for an applicant to have an executed lease and all required approvals, such as zoning and occupancy permits, in place. CAB determined that the fact that a facility becomes unavailable is not fatal to CAB's review and approval of a charter. *Id.* at 15 (citing *Brackbill v. Ron Brown Charter Sch.*, 777 A.2d 131 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 573 Pa. 673, 821 A.2d 588 (2003)). CAB noted that the information provided at the CAB meeting of September 28th that Propel had, shortly before the meeting, lost the Proposed Facility in its application was an unfortunate circumstance, but neither fatal nor novel. Relying on *Souderton Area Sch. Dist. v. Souderton Charter Sch. Collaborative*, 764 A.2d 688 (Pa.Cmwlth.2000), CAB issued an order that prior to opening the school, Propel was to provide the District and CAB with information regarding the facility to be used for the charter school.

The District then petitioned this Court to review CAB's decision and order.[5] On

---

**5.** Because CAB is the administrative agency charged with exclusive review of an appeal of a local school board decision not to grant a charter application, this Court's review is appellate. Thus, we shall affirm CAB's determination unless this Court determines that the

appeal, the District raises four issues for our review. We are asked to determine whether CAB: 1) erred when it found Propel's application was supported by demonstrated, sustainable support; 2) abused its discretion by ruling in favor of Propel despite the fact that under nearly identical circumstances, it had previously denied a charter school application in violation of Article 1, Section 26 of the Pennsylvania Constitution due process right to equal application of the law; 3) erred when it found Propel's application demonstrated its capability, in terms of support and planning, to provide comprehensive learning experiences to students in regard to curriculum and to serve as a model for other schools; and, 4) erred when it granted Propel's appeal and ordered the District to issue the charter without an identified location for the school, and further required Propel to merely inform the District and CAB of its ultimate location. The District contends that this part of the order was erroneous because CAB should have required Propel to submit its proposed site to the District for approval before granting the charter, as required by the CSL.

Resolution of these issues is based upon the statutory interpretation of certain provisions of the CSL. Section 1717–A(e)(2) of the CSL requires a school board to evaluate a charter school application based upon: (i) demonstrated sustainable support, (ii) the applicant's plan for comprehensive learning experiences, (iii) the application's conformance to legislative intent, and (iv) the extent to which the

charter school may serve as a model for other public schools. 24 P.S. § 17–1717–A(e)(2)(i–iv). In addition, the CSL requires a charter school to include in its application 17 enumerated items, one of which requires "[a] description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements." 24 P.S. § 17–1719–A(11).

The District first argues that CAB erred in granting the application because demonstrated, sustainable support did not exist for two reasons. First, the requisite support was not present within the District itself. The only verifiable interest shown by parents for creation of the charter school was their attendance at the December 18, 2003 hearing of the school board, which was markedly low.[6] Moreover, the two community meetings are not examples of demonstrated, sustainable support because neither were school board meetings, there is no record of the meetings, nor is there an attendance record. Second, even assuming the necessary support for Propel existed within the District, there is no evidence of demonstrated, sustainable support within the other nine school districts which would be served by Propel. It argues that the only evidence submitted by Propel is an *unverifiable* chart indicating the number of applications from every eligible school. *Id.* p. 276. Moreover, Propel has not supplied any evidence of support from businesses, professional, civic or

adjudication is in violation of constitutional rights, is not in accordance with law, or is not supported by substantial evidence. *Brackbill,* 777 A.2d at 134 n. 5.

**6.** The District argues that only one person in the audience responded affirmatively in discussing the benefits of Propel, (R. 6–10, p. 193); many community members in attendance at the meeting expressed doubts and

negative feelings about Propel; and, the 194 signatures on the petitions presented at the public hearing did not include *verifiable* information such as the date, time, or place of the collection of the names. *Id.* pp. 173–95. The District contends that the letters of support are also inadequate because they did not appear in the original record of the December 18, 2003 hearing.

social organizations, or entities within the District.

■ The CSL requires a showing of "demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing. . . ." 24 P.S. § 17–1717–A(e)(2)(i). This section makes clear that the applicant must show that the charter school enjoys reasonably sufficient support in the aggregate from all groups, "not showing some minimum level of support from each of the more discrete groups listed." *Brackbill,* 777 A.2d at 137–38.

■ In the case at bar, we find that CAB was correct in finding demonstrated, sustainable support in the form of petitions, community meetings, letters of support, information about financial backing from the foundation community, and pre-applications received from 196 prospective students for enrollment in Propel. The District's argument that the evidence was not "verifiable" is without merit because this Court has found no language in the CSL preventing an applicant from establishing community support through the use of *unverified* petitions which, thus, may be relied upon by CAB. *Id.* at 137. Therefore, CAB's decision is affirmed on this issue.

Next, the District argues that CAB abused its discretion and violated the District's due process and equal protection rights by ruling in favor of Propel when, in *Penn Hills Charter School* (No. CAB 2001–7), it denied a charter application under nearly identical circumstances. In *Penn Hills,* CAB held that the charter school failed to demonstrate sustainable support, as required by Section 1717–A(e)(2)(i) of the CSL, because there was no evidence from parents that they intended to enroll their children in the proposed charter school, or from students who

wished to attend the proposed charter school, or from teachers who supported the grant of the charter. The evidence consisted of eleven letters of support and 197 signatures of residents of Penn Hills or a neighboring municipality who supported the establishment of the charter school; however, those signatures were undated and, in many cases, did not indicate whether the signatory had children.

*Penn Hills,* however, is distinguishable from the case at bar. Here, Propel submitted evidence that *196 students have applied for admission* into Propel, whereas in *Penn Hills,* there was no evidence of pre-applications for admission. CAB could find that Propel has submitted evidence which exceeds that which was provided in *Penn Hills.* Therefore, we hold that CAB did not abuse its discretion in finding in favor of Propel.

Third, the District contends that Propel's submitted curriculum is not "innovative" and does not demonstrate its capability, in terms of support and planning, to provide comprehensive learning experiences to students in regards to curriculum and serving as a model for other schools. The District asserts that Propel's core curriculum, assessment plans, and planned instructional programs are nearly identical to the District's public school. We disagree.

The legislative intent behind the CSL is "to establish and maintain schools that operate independently from the existing school district structure as a method to accomplish . . . [and e]ncourage the use of different and innovative teaching methods. . . ." 24 P.S. § 17–1702–A(2). In order to achieve this goal, the CSL requires an applicant to provide information regarding the "mission and education goals of the charter school, the curriculum to be offered and the methods of assessing

whether students are meeting educational goals." 24 P.S. § 17–1719–A(5).

In the case *sub judice,* the record establishes that Propel offers a learning environment that is unique and different from that in the District's public schools. Propel's proposed plan includes 190 days of school with 6 hours of instruction per day, small classes, high standards for achievement, parent/community involvement, tutorial and positive behavior support, frequent assessments, and a proposed 2.5 hour literacy block. (R. 6–10, pp. 4, 12–14, 28–43, 270–74.) While there may be similarities between Propel and the existing public schools, similarities, alone, are insufficient to support a finding of non-compliance with the CSL when there is substantial evidence of uniqueness. Moreover, we note that CAB has twice previously approved Propel's curriculum in *McKeesport,* No. CAB 2004–1 and *Steel Valley,* No. CAB 2003–1. Therefore, we hold that CAB did not err in finding that Propel's curriculum satisfies the requirements of the CSL.

Finally, the District argues that CAB erred in granting Propel's appeal and ordering the District to issue a charter without an identified location for the school. The CSL requires a charter school to include in its application 17 enumerated items, one of which requires "[a] description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements." 24 P.S. § 17–1719–A(11). The parties differ in how the statutory section should be applied in this particular case.

The District contends that CAB erred in requiring Propel to merely inform the District and CAB of its ultimate location, rather than requiring Propel to submit its site to the District for approval as required by the CSL before the charter is granted. It contends that, because Propel had already lost the original facility at the time of oral argument before CAB, CAB's order failed to conform to this Court's order in *Souderton Area School District v. Souderton Charter School Collaborative,* 764 A.2d 688 (Pa.Cmwlth.2000).[7]

Propel argues that it was prepared and willing to present evidence of the new proposed facility at oral argument before CAB, but was not allowed to do so because of the District's vigorous objections. It further contends that the District's position, that CAB should have done more than direct Propel to provide the District with information about the facility before it opens, has already been rejected by this Court in *Brackbill,* 777 A.2d 131.

In *Souderton* and, the following year, in *Brackbill,* this Court discussed the effect on the grant of a charter to an applicant that had suffered a loss, or potential loss, of the proposed facility listed on its charter school application.

In *Souderton,* even though there was no evidence that the site proposed in the application (in a strip mall) was not available, CAB sua sponte questioned whether the site was still available because two years had elapsed since the application had been filed. Reviewing the suitability of the proposed site, CAB disagreed with the school district's denial and found the proposed site acceptable and available at the time of the application. CAB, therefore, issued an order directing the school district to sign the charter; however, it also stated that,

---

7. The District also contends that CAB erred in determining that the original facility met the requirements under the CSL. However, because the original location is and was no longer available at the time of CAB's hearing, this argument is moot and will not be addressed.

"[i]n addition, prior to opening the charter school, the [applicant] shall provide the School District and the CAB with information regarding the facility to be used for the charter school." 764 A.2d at 696. The district appealed arguing that, because CAB required it to grant the charter without ever viewing the proposed school site, the order violated the CSL. In affirming CAB's order we agreed that, if the school district's interpretation of CAB's order was correct, "the CAB contravened section 1719–A(11) of the CSL." *Id.* at 697. However, we found that CAB's order "directing the [school district] to sign [the] charter school Application, refers *only* to the Application including the Strip Mall Facility." *Id.* (emphasis added). We interpreted the other language to:

> ... direct[] [applicant] to inform the School District and the CAB in the event that [applicant] would need to use a different facility. In this way, the School District and the CAB would be aware that [applicant] would *have to submit a new application* to the District Board and *afford the District Board an opportunity to consider whether the facility is appropriate* under the CSL.

*Souderton,* 764 A.2d at 698 (emphasis added). This Court further noted that CAB intended that the applicant provide this information *prior* to the district's grant of the application and, thus, the school district would be required to sign the charter *only if* the strip mall facility remained available. *Id.* at 698 n. 23.

In *Brackbill,* the proposed site and alternative site listed in the revised application were no longer available to the charter school *because* of the school district's delay. CAB, nonetheless, issued an order directing the school district to grant the revised application and sign the charter, and required the charter school applicant to provide the district and CAB with information regarding the facility to be used prior to the opening of the charter school. On appeal, the district argued that CAB's order was contrary to public policy because it would allow an applicant to wait until after an application was approved before proposing a location. *Id.,* 777 A.2d at 138–39. In affirming CAB's order, this Court held that "any loss of authority to react in the first instance to the proposed facility [was] a deprivation of [the district's] own making." *Id.* at 139. The applicant complied with the CSL, and it was the district, through delay caused by its own inaction, which caused the applicant's loss of rights in the two proposed facilities. *Id.* We held it was "unreasonable to expect an applicant to maintain rights in the precise vacant property listed in an application for the period which it has taken for the revised application to wend its way from the District Board to the CAB to this court." *Id.* We emphasized that implicit in CAB's grant of the charter was a requirement that a suitable facility be secured, and that failure to do so would be grounds for termination of the charter. *Id.* at 139 n. 8.

The facts in *Souderton* and *Brackbill* are not directly on point with the case at bar, although both cases stress the importance of a suitable site. Although the *Souderton* Court ordered the charter to be signed, it was only to be signed if the original site was available, and, if it was not, the applicant had to file a "new application." In *Brackbill,* although we affirmed the order requiring the charter to be granted because it was the school district's fault that an available and acceptable site was lost, the charter would be terminated if the charter school failed to obtain a suitable facility.

 Here, there is no allegation that the District caused the proposed site to be

lost and, therefore, *Brackbill* is not applicable. Under *Souderton,* the proposed facility must be presented for the District or CAB to approve prior to the school opening, and before the application is granted. We have previously held that CAB has the authority to conduct a de novo review of a school district's denial of a charter application. *Sch. Dist. of City of York v. Lincoln–Edison Charter Sch.,* 772 A.2d 1045, 1048 (Pa.Cmwlth.2001). Here, however, given its authority to conduct a de novo review, CAB erroneously failed to hear Propel's evidence concerning the new proposed site when it sustained the District's objections. Under *Souderton,* CAB could not then order the District to grant the charter in the absence of any evidence of a proposed site for the school. Accordingly, because CAB failed to hear and consider Propel's evidence with regard to the new proposed facility, we must vacate CAB's order and remand to CAB for the purpose of hearing this evidence to determine whether the new proposed site is suitable under the CSL before CAB can order the charter to be granted.

### *ORDER*

**NOW,** January 4, 2006, the order of the State Charter School Appeal Board in the above-captioned matter is hereby vacated and this matter is remanded in order for CAB to hear evidence of the new proposed facility.

Jurisdiction relinquished.