# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Young Scholars of Southeastern    :
Pennsylvania Charter School,    :
                 Petitioner    :
    :
            v.    :   No. 514 C.D. 2023
    :   Submitted: June 7, 2024
Norristown Area School District    :
(Charter School Appeal Board),    :
             Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: September 5, 2024**

Young Scholars of Southeastern Pennsylvania Charter School (YSSCS) petitions for review an Order of the Charter School Appeal Board (CAB), which denied YSSCS's appeal of a decision of the Norristown Area School District (District) Board of Directors (Board) denying YSSCS's application to open and operate a charter school in the District. YSSCS argues CAB erred in concluding that YSSCS did not show sustainable support as required under Section 1717-A(e)(2)(i) of the Charter School Law (CSL), 24 P.S. § 17-1717-A(e)(2)(i).[1] After review, we affirm.

---

[1] The CSL is part of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A—17-1751-A.

## I. BACKGROUND

### A. YSSCS's Second Revised Application

YSSCS initially applied to open and operate a charter school in the District on November 14, 2019. (CAB Opinion (Op.), Finding of Fact (FOF) ¶ 1.) The Board held a public hearing on YSSCS's initial application on December 16, 2019, (the Hearing), and on February 24, 2020, the Board denied it. (*Id.* ¶¶ 2-4.) YSSCS then submitted a revised application, which the Board likewise voted to deny. (*Id.* ¶¶ 6-8.) Thereafter, on May 18, 2020, YSSCS submitted the instant Second Revised Application. (*Id.* ¶ 10.) The Board considered the Second Revised Application at a special meeting on August 17, 2020, including the materials from the two previous applications and the transcript of the Hearing. (*Id.* ¶¶ 12, 14.)

YSSCS projected that its first-year enrollment would be 220 students, (*id.* ¶ 35), and attached to the Second Revised Application pre-enrollment forms, which stated as follows:

> I [(name)], hereby state my intent to enroll my child(ren) in . . . []YSSCS[] once it receives its charter. . . .
>
> I understand that . . . []YSSCS[] has not yet been granted a charter. By signing this enrollment form, I am stating my intent to send my child(ren) to the YSSCS, but I am not obliged to do so. If a charter is granted for the school, I understand that I will need to complete official enrollment documents in order for my child(ren) to be enrolled at the school. YSSCS is projected to open in September 2020.

(*Id.* ¶ 37.) YSSCS also attached a number of online enrollment forms. (*Id.* ¶ 38 & n.2.)

YSSCS further included 10 emails which it labeled as "[o]nline [l]etters of [s]upport." (*Id.* ¶ 39.) These emails state that they were generated as a result of filling out a form on www.ysscs.com, and they provide the name and contact

information of the individual who filled out a form.  (*Id*. n.3; Board's Denial of the Second Revised Application (Board's Denial), FOF ¶ 27.[2])  YSSCS also attached "[a] copy of the electronic form that is presumably responsible for generating the emails[,]" which states as follows:

> I support the creation of . . . []YSSCS[], a kindergarten through eighth grade charter school to be located in the . . . District and proposed to open in September 2020.  YSSCS will allow our community to start a school from the ground up that reflects the needs of our families and our students and helps to improve the future of our community, our state, and our country.
>
> YSSCS [is] designed to make sure that our children are well prepared for high school and beyond.  YSSCS will provide a school day tailored to the needs of individual students, making sure that every child masters the information necessary for success.  YSSCS will harness the latest technology to foster personal responsibility and help students become independent learners by combining the best of both live and online classroom experiences.
>
> An independent board of directors that includes educators, business leaders, parents, and other members of our community will govern the YSSCS that will give families in this area an important opportunity to access a quality education unique to anything currently available.

(Board's Denial, FOF ¶ 28; Reproduced Record (R.R.) at 604a-05a.)

At the Hearing, the following Founding Members of YSSCS "were present: Adam Kenz, Brittany Trofe, Bastian Schotsman, Dr. Anthony Mooring, Cheryl Jackson, Denise Agurto, and Jennifer Arevalo."  (CAB Op., FOF ¶ 43.)  The Founding Members present at the Hearing established as follows:  Mr. Kenz lives in Hatboro, which is not in the District, and became involved with YSSCS through parents in the District; Ms. Arevalo lives in Ambler and became involved with

---

[2] The Board's Denial can be found in the Reproduced Record at 3193a-221a.  We glean some facts from the Board's Denial for background purposes only.

3

YSSCS through Mr. Kenz, she is the Chief Executive Officer of Souderton Charter School Collaborative, which is in the Souderton School District, and she confirmed that Wendy D. Ormsby, M.S., another Founding Member who was absent from the hearing, lives in Harleysville;[3] Ms. Trofe lives in the District, became involved in YSSCS through her previous work with Mr. Kenz, and is a teacher; Mr. Schotsman is Ms. Trofe's husband and became involved in YSSCS through Ms. Trofe, he was a teacher in the Netherlands, and he is now "an education manager at a post-secondary automotive school in Exton"; Ms. Jackson lives in the District, became involved in YSSCS through receiving information in the mail, and is the grandparent and legal guardian of students in the District; Ms. Agurto lives in North Wales, became involved in YSSCS through a postcard "received by one of her clients," and she works for ACLAMO Family Centers in the District; and Dr. Mooring lives in Landsdale, became involved in YSSCS through discussions with Mr. Kenz, and is in the process of obtaining "a doctorate in Urban Education Leadership and Education Policy." (Board's Denial, FOF ¶¶ 34-41.) Ms. Jackson also provided public comment in support of YSSCS at the Hearing. (CAB Op., FOF ¶ 44.) Five other District residents made public comments at the hearing "in opposition to the issuance of a charter to YSSCS." (*Id*. ¶ 45 & n.4.)

### B. Board's Denial

After considering the foregoing evidence, the Board voted to deny the Second Revised Application with written notice provided to YSSCS on August 19, 2020. In sum, the Board denied the Second Revised Application because YSSCS

---

[3] Charles A. Green, III is another Founding Member who was not present at the hearing. His resumé, which is part of the record before this Court, demonstrates he resides in the District. (*See* R.R. at 627a.)

4

failed to meet the criteria set forth in [Section] []1717-A(e)(2)(i)-(iv) by (1) failing to demonstrate the capability, in terms of support and planning, to open a school that would provide a comprehensive learning experience, (2) failing to adequately budget for critical teaching jobs, program staffing, and special education services, (3) failing to present a complete and properly aligned educational curriculum, (4) failing to produce sufficient evidence of sustainable support from the community, and (5) failing to demonstrate how YSSCS is unique or innovative, or could serve as a model for other schools.

(*Id.* ¶¶ 11-12, 16.)

YSSCS thereafter sought to appeal the Board's Denial. To be eligible to appeal, Section 1717-A(i)(2), (5) of the CSL required YSSCS to "obtain the signatures of at least two per centum of the residents of the school district or of one thousand (1,000) residents, whichever is less, who are over eighteen (18) years of age" and present these signatures to the local court of common pleas for verification. 24 P.S. § 17-1717-A(i)(2), (5). YSSCS collected signatures and presented them to the Court of Common Pleas of Montgomery County (trial court). The parties stipulated that YSSCS collected the requisite number of signatures as required by the CSL, and the trial court issued an order certifying YSSCS's petition to appeal. YSSCS appealed to CAB. (CAB Op., FOF ¶¶ 18-21.)

### C. CAB's Opinion

After YSSCS presented its appeal to CAB, CAB issued a scheduling order requiring the parties to file motions to supplement the record by August 16, 2021. (*Id.* ¶¶ 23-24.) Neither party filed a motion to supplement the record by this date. (*Id.* ¶ 25.) CAB also directed the parties to file briefs and proposed findings of fact and conclusions of law, which the parties timely filed. (*Id.* ¶¶ 26-31.) CAB held a hearing on December 6, 2022, for the parties to present their arguments and answer questions, and voted on January 10, 2023; however, the matter was tabled because

of a tie vote. (*Id.* ¶¶ 32-33.) CAB thereafter voted on February 21, 2023, to deny YSSCS's appeal. (*Id.* ¶ 34.)

CAB conducted a *de novo* review and issued its Opinion and Order on April 24, 2023. With respect to evidence of sustainable support, CAB first found that YSSCS provided "133 pre-enrollment forms identifying 159 students for potential enrollment[,]" along with "[o]nline [e]nrollment forms identifying 112 students for potential enrollment." (*Id.* ¶¶ 36-38.) CAB noted that at least 45 of these students, however, would not be eligible to enroll by September 2020. (*Id.* ¶ 38 & n.2.) CAB acknowledged the "[o]nline [l]etters of [s]upport" noting that they "appear to be automatically generated emails that were produced because of filling out an electronic form[,]" "[n]one of the[m] . . . are actual letters written by an individual in the [District] community wishing to express support for YSSCS," and "none of the[m] . . . articulate any reasons why the writer supports the establishment of YSSCS'[s] charter." (*Id.* ¶ 39 & n.3; *see also id.* at 15.) CAB stated that YSSCS did "not include any letters of support from community businesses, organizations, or other members of the [District] community." (FOF ¶ 40.) CAB also found that YSSCS did not engage with any community groups in creating its plans, nor did it identify any support from "local or statewide community leader[s]." (*Id.* ¶¶ 41-42.) Further, CAB found that YSSCS "does not identify any support for YSSCS'[s] charter from teachers, outside the [F]ounding" Members. (*Id.* ¶ 42.) Considering the testimony at the Hearing, CAB found that the only public comment made in support of YSSCS came from Ms. Jackson, a Founding Member, and the remaining public comments were "made in opposition" to YSSCS's charter. (*Id.* ¶¶ 44-45; *see also id.* at 15.) Regarding the composition of the Founding Members, CAB found that less than half of the individuals are "members of the [District] community."

6

(FOF ¶ 46.)  It cited *Appeal of Vitalistic Therapeutic Center Charter School* (CAB Docket No. 1999-06, filed August 18, 1999), and *Dr. Lorraine K. Monroe Academy Charter School* (CAB Docket No. 2000-16, filed March 21, 2001),[4] for the proposition "that where a charter school's board of directors consists mainly of individuals who are not residents of the district in which the school is to be located, that fact will support a determination that the charter school has failed to demonstrate sustainable support." (*Id*. at 16.)  Taking these findings into consideration, CAB concluded YSSCS did not demonstrate sustainable support. (*Id*. at 15.)

CAB further noted that because YSSCS did not show a majority of the Founding "[M]embers own business or property in [the District,]" "there are no mitigating factors to consider when observing that a majority of YSSCS'[s Founding Members] do[] not reside in [the District]." (*Id*. at 16-17.)  CAB also discussed YSSCS's argument that the signatures collected for purposes of appeal under Section 1717-A(i)(2) of the CSL should be considered as evidence of sustainable support.  CAB concluded that "[t]hose signatures were collected after the fact and for a different purpose." (*Id*. at 16.)  CAB mentioned that the individuals who signed the petitions for purposes of appeal "could have appeared at the [H]earing to express their support for [YSSCS's] charter school plan but apparently did not do so." (*Id*.)  CAB stated that "it cannot be presumed that their support is sustainable simply because they signed the petition to allow YSSCS to appeal the [Board's Denial]." (*Id*.)  Thus, CAB refused to consider the petition signatures for purposes of appeal as evidence of sustainable support.

---

[4] Copies of CAB's decisions can be found at https://www.education.pa.gov/K-12/Charter%20Schools/Appeals/Pages/AppealBoardDecisions.aspx (last visited September 4, 2024).  Although decisions of CAB have no precedential value in this Court, we may use them for their persuasive value. *See Bagwell v. Pa. Dep't of Educ.*, 76 A.3d 81, 87 (Pa. Cmwlth. 2013).

In sum, CAB agreed with the Board that YSSCS did not demonstrate sufficient community support for its charter. CAB therefore concluded that it did not need to address any of the remaining reasons the Board cited in denying the Second Revised Application. (*Id*. at 17.) YSSCS filed its petition for review in this Court.[5]

## II. PARTIES' ARGUMENTS[6]

### A. YSSCS

YSSCS argues that CAB erred in not properly considering the evidence of sustainable support for YSSCS's charter in the aggregate. YSSCS states that it has provided "sufficient pre-enrollment forms, letters of support, and testimony" to establish sustainable support from the District community. (YSSCS's Brief (Br.) at 10.) YSSCS contends that the "online letters of support" should be considered as evidence of sustainable support, notwithstanding the fact that they are form letters. YSSCS cites *School District of Pittsburgh v. Provident Charter School for Children With Dyslexia*, 134 A.3d 128 (Pa. Cmwlth. 2016), for the proposition that it is the content of the letters that matters, and because the "online letters of support" identify

---

[5] This Court's

review of a[] [CAB] adjudication considers whether constitutional rights were violated, whether errors of law were committed, or whether the decision is not supported by substantial evidence. *Ronald H. Brown Charter Sch*[.] *v. Harrisburg City Sch*[.] *Dist*[.], 928 A.2d 1145, 1147 n.6 (Pa. Cmwlth. 2007). "Substantial evidence" is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carbondale Area Sch*[.] *Dist*[.] *v. Fell Charter Sch*[.], 829 A.2d 400, 405 (Pa. Cmwlth. 2003).

*Sch. Dist. of Pittsburgh v. Provident Charter Sch. for Children With Dyslexia*, 134 A.3d 128, 139 n.23 (Pa. Cmwlth. 2016).

[6] We reorganize the parties' arguments for clarity.

YSSCS and the location of the charter school, the content of the Online Letters demonstrates sufficient sustainable support. YSSCS further argues that CAB erred in not considering the support of the Founding Members. YSSCS states that it goes against precedent to discount support "simply because it comes from a founding member of [a] charter school" and cites *Brackbill v. Ron Brown Charter School*, 777 A.2d 131 (Pa. Cmwlth. 2001), for this proposition. (YSSCS's Br. at 17.) YSSCS states that a majority of the Founding Members work, are educators, reside, or have family in the District. Thus, CAB should not have discounted their support. Also, YSSCS contends that CAB imposed a new requirement when it noted that no Founding Member owns businesses or property in the District. YSSCS challenges CAB's use of *Lorraine* and *Vitalistic* in concluding that because a majority of the Founding Members are not members of the District, YSSCS did not show sustainable support. YSSCS further argues that CAB erred in not considering the 1,000 signatures required to appeal the Board's Denial under Section 1717-A(i)(2) of the CSL as evidence of sustainable support. YSSCS contends that CAB has previously held that the signatures required for appeal purposes may properly be considered as evidence of sustainable support and cites *In re Ronald H. Brown Charter School* (CAB Docket No. 1999-01, filed December 2, 1999), for this proposition.

YSSCS also argues that CAB was equitably estopped from denying the Second Revised Application because YSSCS modeled the Second Revised Application off applications that were granted for other charter schools. Namely, YSSCS states Young Scholars of McKeesport Charter School was granted a charter, that decision was affirmed by this Court in *McKeesport Area School District v. Young Scholars of McKeesport Charter School* (Pa. Cmwlth., No. 373 C.D. 2015,

9

filed July 13, 2015),[7] and the Second Revised Application was modeled off that plan. YSSCS claims it "relied to [its] detriment on that prior grant of a charter in the preparation and presentation of the [Second Revised] Application[.]" (YSSCS's Br. at 25.) For that reason, YSSCS claims CAB was equitably estopped from denying its appeal of the Board's Denial.

### B. The Board

The Board responds that CAB correctly found that YSSCS did not demonstrate sustainable support from the District community. The Board explains that YSSCS "provided (1) the statutor[il]y required 1,000 signatures, (2) pre-enrollment forms, (3) ten generic emails of 'support,' (4) one public comment in favor of the [charter school] at the [H]earing, and (5) [Founding M]embers." (Board's Br. at 9.) Regarding the "online letters of support," the Board acknowledges that they "did contain the name of the charter school and expressed support," but notes that "the letters did not offer specific support as it did in *Provident*[.]" (*Id*. at 13.) Essentially, the Board argues that they should not be considered as evidence of sustainable support since they were not written by community members themselves and did not state a particular reason why the individual supports YSSCS. The Board also emphasizes CAB's conclusion that the majority of the Founding Members are not members of the District, and this fact supports the conclusion that YSSCS does not have sustainable support under *Lorraine* and *Vitalistic*. The Board also takes issue with YSSCS's representation that a majority of the Founding Members are members of the District because they

---

[7] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

10

are residents, teachers, or have family members in the District.[8] In addition, the Board argues that Ms. Jackson "was the only member from the [District] community that spoke in support of [YSSCS's] application." (*Id*. at 12.) The Board further contends that the signatures collected for purposes of appeal under Section 1717-A(i)(2) of the CSL cannot be considered as evidence of sustainable support. The Board argues that YSSCS mis-cites *In re Brown* for this proposition and explains that the signatures required for a petition to appeal are under an "entirely different section of the [CSL] than the requirements to prove sustainable support, [and] the Legislature made the conscious choice to not include these signatures in the sustainable support section." (*Id*. at 10.) Even further, the Board contends that "the appeal petition signatures are, by definition under the statute, gathered months **after** the application is submitted to the school district." (*Id*. (emphasis in original).)

The Board also argues that CAB was not barred by equitable estoppel principles from considering the Second Revised Application on its own merits. The Board contends that YSSCS has not shown where CAB "promised" that the plan the Second Revised Application was modeled upon "will be successful at every turn." (*Id*. at 7.) Thus, CAB was not barred by equitable estoppel from denying YSSCS's appeal.

## III. ANALYSIS

### A. *Sustainable Support*

Section 1717-A(e)(2)(i) of the CSL provides:

---

[8] To the extent that the Board argues some facts have changed regarding the Founding Members' residences, (*see* Board's Br. at 12 nn.2-3), this Court cannot consider those arguments as those purported facts are not of record. *See Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bullard)*, 790 A.2d 1072, 1075-76 (Pa. Cmwlth. 2001) ("It is well settled that items which are not part of the record may not be considered by . . . the appellate body on review.").

[] A charter school application submitted under this article shall be evaluated by the local board of school directors based on criteria, including, but not limited to, the following:

[] The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing[.]

24 P.S. § 17-1717-A(e)(2)(i). CAB has defined "sustainable support" "as support sufficient to sustain and maintain the proposed charter school as an ongoing identity." *Lorraine*, CAB Docket No. 2000-16 at 11. CAB has also explained that the relevant community for review purposes is the school district in which the local charter school is proposed. *Vitalistic*, CAB Docket No. 1999-06 at 8. In considering whether an application for a charter school has demonstrated sustainable support, the evidence is considered "in the aggregate and not by individual categories." *Carbondale Area Sch. Dist. v. Fell Charter Sch.*, 829 A.2d 400, 405 (Pa. Cmwlth. 2003) (citing *Brackbill*, 777 A.2d at 138 (internal quotation marks omitted)). In other words, an applicant "need not demonstrate a threshold level of support among each of the discrete groups, *i.e.*, teachers, parents, students[,] and community members[,]" *Provident*, 134 A.3d at 140, and lacking evidentiary support in one group is not fatal to the application, *Carbondale*, 829 A.2d at 405. However, "the applicant must show that the charter school enjoys reasonably sufficient support in the aggregate from all groups[.]" *Montour Sch. Dist. v. Propel Charter School-Montour*, 889 A.2d 682, 687 (Pa. Cmwlth. 2006).

YSSCS contends CAB erred in disregarding the "online letters of support," the support from the Founding Members, and the 1,000 signatures required for appeal. We address these arguments in turn.

12

### 1. "Online Letters of Support"

CAB determined that the ten generic emails characterized as letters of support "appear to be automatically generated emails that were produced because of filling out an electronic form" and did not state any reason why the individual named in the email supported YSSCS, and, thus, could not be considered as evidence of sustainable support. (CAB Op., FOF ¶ 39 & n.3; *see also id.* at 15.) Both YSSCS and the Board cite the case of *Provident* to support their arguments relative to the "online letters of support." There, the school district argued that the letters of support provided by the applicant charter school could not be considered as evidence of sustainable support because they were "form letters." *Provident*, 134 A.3d at 140. This Court concluded that being form letters was "of no moment," and it is the "content of the letters that is significant." *Id.* (emphasis omitted). Specifically, the Court explained that the form letters demonstrated support for the charter school at issue, and not "to the abstract concept of a [charter] school[.]" *Id.* The Court stated that the form letters were "specific" in that they supported the named charter school in the proposed location. *Id.* Accordingly, the Court concluded that the letters were properly considered by CAB as evidence of sustainable support. *Id.*

In the record here, there is the text of a "Letter of Support" for YSSCS with boxes in which to fill in name of supporter, address, email, phone, signature, and date. (R.R. at 605a-06a.) It appears to be an online form, which has not yet been completed. There are also emails, titled "Letter[s] of Support," which do **not include the text of the letter** and only include the "Name of Supporter," and the address, email, phone, an electronic signature, and date. (*Id.* at 607a-16a.) At the bottom of each email is written: "This e-mail was sent from a contact form on [YSSCS] (http://www.ysscs.org)." (*Id.*) These emails could have been generated

13

from completion of the "Letter of Support" form, or they could have been generated in another way. The emails contain **no text** from the "Letter of Support"; the emails contain only names and identifying information. It is these emails that YSSCS refers to as "[o]nline [l]etters of [s]upport." However, these emails are **not** like the form letters in *Provident*, where the supportive statements were included in the same document with the identifying information of the individuals. Thus, while the "Letter of Support" provides that the signing individual "support[s] the creation of Young Scholars of Southeastern Pennsylvania Charter School (YSSCS), a kindergarten through eighth grade charter school to be located in the Norristown Area School District and proposed to open in September 2020[,]" (R.R. at 605a-06a), *see also Provident*, 134 A.3d at 135 n.8 (emphasizing similar language in the form letters therein), the "Letter of Support" form was a separate document, and the emails did **not contain any of the language** from the "Letter of Support." In sum, because the emails do not contain any statements of support for YSSCS, we cannot conclude that CAB erred in disregarding these "[o]nline [l]etters of [s]upport."

### 2. Founding Members

Next, YSSCS takes issue with CAB disregarding the support of the Founding Members. A few cases are instructive here. First, in *Brackbill*, this Court considered the issue of whether members of the board of trustees of an applicant charter school can provide testimony in support of the school at a public hearing. 777 A.2d at 137. The school district complained that only two of the individuals who testified at the public hearing were not connected to the charter school's board or its proposed building location. This Court held that because "the board members who testified [were] either parents, teachers, or other members of the community," CAB properly relied on their testimony as evidence of sustainable support. *Id*. This Court

14

concluded that "nothing in the [CSL] prohibits members of the [b]oard of [d]irectors of a proposed charter school from testifying." *Id*. Therefore, the Court concluded that CAB properly considered the testimony provided by the board of directors at the public hearing as evidence of sustainable support. *Id*.

In *Vitalistic*, CAB analyzed whether the applicant charter school demonstrated sustainable support in the school district where the charter school was proposed. CAB noted that a majority of the charter school's board consisted of individuals who were not members of that district. The charter school argued to CAB that a majority of the board members, however, did "own businesses within the [district] and are property owners." *Vitalistic*, CAB Docket No. 1999-06 at 8. Notwithstanding, CAB concluded that a majority of the charter school's evidence of sustainable support came from non-district residents. Because of the lack of evidentiary support from members of the district where the charter school was proposed to be located, including that a majority of the charter school's board members were not members of the district, CAB concluded that the district's school board of directors did not err in concluding that the charter school did not establish sustainable support from the community. *Id*. at 9.

In *Lorraine*, CAB likewise analyzed whether the applicant charter school demonstrated sustainable support from the district where the charter school was proposed. CAB Docket No. 2000-16 at 12-13. CAB concluded that much of the demonstrated support came from a neighboring community. For example, CAB noted that only six percent of the signatures on a supporting petition were from the district where the charter school was proposed, the founder of the charter school was not from the district, and no member of the district was involved in the application process until after the application was submitted to the school district's board. *Id*.

CAB also noted that the charter school did not provide any pre-enrollment forms. Thus, CAB concluded the charter school in *Lorraine* did not demonstrate sustainable support. *Id.*

Here, only Ms. Jackson, who is a Founding Member and member of the District, testified in support of YSSCS at the Hearing as a member of the District community. To the extent YSSCS attempts to argue that other Founding Members present at the Hearing testified in support of the charter school as members of the District, (*see* YSSCS's Br. at 17-19 & n.2), this suggestion is misleading. At the Hearing, the Board asked the present Founding Members to introduce themselves and explain how they became involved with YSSCS. (*See* R.R. at 37a-46a.) The Founding Members, however, did not present testimony in support of the charter school as members of the community, besides Ms. Jackson. (*See id.* at 166a-80a.) CAB acknowledged Ms. Jackson's testimony in support of YSSCS, which is permissible. (CAB Op., FOF ¶ 44); *Brackbill*, 777 A.2d at 137. However, CAB did not err in stating that this was the **only** supportive testimony at the Hearing from a member of the District.

CAB also concluded that a majority of the Founding Members were not members of the District, nor did they own businesses or property in the District. Essentially, YSSCS contends that CAB lacked substantial evidence of record to conclude so. However, the record supports CAB's conclusions. First, a majority of the Founding Members do not reside in the District. Mr. Kenz, Ms. Arevalo, Ms. Ormsby, Ms. Agurto, and Dr. Mooring testified that they resided elsewhere, while Ms. Trofe, Mr. Schotsman, and Ms. Jackson testified that they reside in the District.[9]

---

[9] As noted above, Mr. Green, who was not present at the hearing, also appears to reside in the District based on his resumé. (*See* R.R. at 627a.) Even so, it remains that a majority of the Founding Members reside outside the District.

16

(*See* R.R. at 37a-46a.) YSSCS maintains that some of the Founding Members at least work in the District, like Ms. Agurto, although she is neither a teacher, a student, or a parent of children in the District. *Brackbill*, 777 A.2d at 137. Further, there were no findings by CAB or testimony at the Hearing to rebut CAB's conclusion that a majority of the Founding Members do not own business or property in the District. CAB did not, as YSSCS maintains, impose a requirement for YSSCS to show that the Founding Members own business or property in the District. Rather, CAB analyzed whether there were any "**mitigating factors** to consider when observing that a majority of YSSCS'[s] [F]ounding [Members] and board does not reside in [the District]." (CAB Op. at 16-17 (emphasis added).) Like the cases of *Lorraine* and *Vitalistic*, here, CAB considered whether YSSCS's evidence of sustainable support came from members of the District, such as whether the Founding Members reside in the District, or own businesses or property in the District. Accordingly, we cannot conclude that CAB erred in finding that Ms. Jackson's testimony was the only supportive testimony at the Hearing, and that a majority of the Founding Members are not members of the District.

### 3. Signatures for Purposes of Appeal

YSSCS next takes issue with CAB not considering the more than 1,000 signatures gathered for purposes of appeal as evidence of sustainable support and contends that *In re Brown* decided such. However, in that case, CAB considered whether unverified petition signatures **not** gathered for appeal purposes could properly be considered as evidence of sustainable support. There, members of the community "circulated petitions for signatures in support of the [c]harter [s]chool[,]" and these petitions of support stated that the signer was a resident of the community where the charter school was proposed, was at least 18 years old, and was signing to

17

support the creation of the charter school. *In re Brown*, CAB Docket No. 1999-01 at 20-21. There was no statement that the petitions were being circulated for purposes of appeal. *Id.* The school district challenged the charter school's petition signatures because "there was no certification, attestation[,] or verification of accuracy by the actual signature gatherers." *Id.* at 20. CAB explained that there is no requirement under the CSL that petition signatures be certified, and that these signatures "were **not gathered as part of the 'appeal process' pursuant to Section []1717-A[](i)(2)**, which are subsequently reviewed by the local [c]ourt of [c]ommon [p]leas[,]" but "did in fact contain the very same type of information as required by the [CSL]" for appeals purposes, like being a resident of the school district and being at least 18 years old. *Id.* (emphasis added). Therefore, CAB concluded that unverified petition signatures could properly be considered as evidence of sustainable support.

Here, YSSCS attempts to argue that CAB should have considered the 1,000 signatures on the appeal petitions as evidence of sustainable support. *In re Brown* does not stand for this proposition; rather, that case stood for the rule that unverified signatures on petitions of support that were not collected as part of the appeals process, but contained similar information, can properly be considered as evidence of sustainable support. The petitions of support in *In re Brown* were different than YSSCS's appeal petitions here. YSSCS explains that its appeal petitions were titled "Petition to Appeal the Norristown Area School District Board of School Directors' Rejection of the Application for a Charter School for [YSSCS,]" and provided a statement that "I am signing the Petition to Appeal the August 17, 2020 decision of the Norristown Area School District Board of Directors[.]" (YSSCS's Br. at 6-7 (internal quotation marks omitted).) Thus, YSSCS's appeal petitions differ from the

18

petitions of support in *In re Brown* as they were collected for the purpose of appeal, rather than for the purpose of gathering evidence of sustainable support.

Furthermore, this Court has recently held that the CSL is designed as a "two-tiered approach" and, as such, "the trial court's determination on the **procedural question** of whether the requisite number of signatures have been obtained **is separate** from the appeal before the CAB pertaining to the **merits** of the [] denial of [a] charter school application." *Norristown Acad. Charter Sch. v. Norristown Area Sch. Dist.*, 305 A.3d 1191, 1199 (Pa. Cmwlth. 2023), *reargument denied* (Jan. 2, 2024) (emphasis in original). We further explained in *Norristown* that the trial court's record pertaining to the signatures required for appeal purposes and CAB's record on the merits "are necessarily different in substance and source[.]" *Id.* Therefore, signatures that are collected for purposes of appeal, and necessarily **after** "the record [h]as [been] certified by the local board of directors," 24 P.S. § 17-1717-A(i)(6), cannot be considered as evidence of sustainable support. *See also Carbondale*, 829 A.2d at 405 (explaining that CAB should not allow a party to supplement the record if the information was available to the applicant charter school prior to the school district's vote). We thus conclude that CAB did not err in not considering YSSCS's signatures for purposes of appeal as evidence of sustainable support.

### 4. YSSCS's Evidence of Sustainable Support in the Aggregate

YSSCS maintains that it has presented "sufficient pre-enrollment forms, letters of support, and testimony" to demonstrate sustainable support. (YSSCS's Br. at 10.) As demonstrated above, the evidence that can be considered as evidence of

19

sustainable support are the pre-enrollment forms identifying 226 students[10] and Ms. Jackson's testimony. We note that pre-enrollment forms are strong evidence of support. *See McKeesport Area Sch. Dist. v. Propel Charter Sch. McKeesport*, 888 A.2d 912 (Pa. Cmwlth. 2005). In *Propel Charter School McKeesport*, this Court considered whether CAB erred in concluding that the applicant charter school demonstrated sustainable support. The Court explained that CAB found that the charter school submitted petitions of support with 497 signatures, 237 of which were signatures of parents requesting enrollment information, and 210 of those signatures were from parents who resided in the school district. CAB also found that the charter school submitted "letters of support from residents, foundations, businesses[,] and elected officials." *Id*. at 916. The charter school supplemented the record with "previously unavailable information" at a hearing before CAB, submitting 168 pre-enrollment forms. *Id*. at 917. Although CAB stated that "there [wa]s no better evidence" than the pre-enrollment forms, and that they "clearly evidence[] the level of support in the aggregate as required by the CSL[,]" the charter school **also** submitted hundreds of signatures on petitions of support and letters of support from **residents**, **foundations**, **businesses**, and **elected officials**. *Id*. at 916. This Court concluded that it "agree[d] with [] CAB that, **taken in its entirety**, the information submitted by [the charter school] is sufficient to prove demonstrated, sustainable support for its charter school application." *Id*. at 917 (emphasis added). In sum, although the charter school had strong evidence of sustainable support based on the

---

[10] CAB stated that YSSCS collected 133 pre-enrollment forms identifying 159 students for enrollment, and online enrollment forms identifying 112 students for enrollment, totaling 271 students identified for potential enrollment. (CAB Op., FOF ¶¶ 36-38.) CAB then states that at least 45 of those 271 students would not be eligible to enroll by YSSCS' proposed opening date. (*Id*. ¶ 38 n.2.) Therefore, YSSCS identified 226 students for potential enrollment. YSSCS does not dispute that 45 students would not be eligible to enroll by YSSCS' proposed opening date. (*See generally* YSSCS's Br.)

20

pre-enrollment forms, this Court also considered the charter school's demonstrated evidence of sustainable support from other members of the community like residents, foundations, businesses, and elected officials.

In other cases where an applicant charter school demonstrated sustainable support, the record reflects evidence of support from the various groups like parents, students, teachers, or other community members. *See Provident*, 134 A.3d at 128 (concluding CAB did not err in finding the charter school demonstrated sustainable support where the charter school had "multiple petition[s of support] from individuals residing within a 4-block radius of [the school's] proposed site[,] letters from parents, educators and a student[,] and appearances at two public hearings"); *Montour School Dist.*, 889 A.2d at 687 (concluding CAB did not err in finding the charter school demonstrated sustainable support where the charter school had "petitions, community meetings, letters of support, information about financial backing from the foundation community, and pre-applications received from 196 prospective students for enrollment[.]"); *Central Dauphin Sch. Dist. v. Founding Coal., Infinity Charter Sch.*, 847 A.2d 195, 201 (Pa. Cmwlth. 2004) (citation omitted) (concluding CAB did not err in finding the charter school demonstrated sustainable support where the charter school had "parents of more than [90] children [] express[ing] a direct interest in enrolling their children" and "more than [20] separate and unique persons that spoke at the public hearings [] offering support for [the charter school], and these speakers represented parents, students and teachers"); *Carbondale*, 829 A.2d at 405 (concluding CAB did not err in finding the charter school demonstrated sustainable support where the charter school had 126 pre-enrollment forms, a well-attended hearing with "standing[-]room only," petitions of support, emails and "letters of support from residents, businesses, and elected

21

officials," and monetary donations); *Brackbill*, 777 A.2d at 138; & *In re Ronald Brown*, CAB Docket No. 1999-1 at 20-22 (concluding CAB did not err in finding the charter school demonstrated sustainable support where the charter school had several district residents who were parents, teachers, and other members of the district who testified in support, petitions of support, and high attendance at three informational meetings with "enthusiastic" support from attendees).

Here, YSSCS's pre-enrollment forms are strong evidence of sustainable support, but we must note that YSSCS's demonstrated support from the remaining groups is low. In comparing the evidence of support from different groups in the above-listed cases where CAB and this Court concluded that the applicant charter schools demonstrated sustainable support, as compared to YSSCS's evidence, we cannot conclude that CAB erred in finding that YSSCS did not demonstrate sustainable support. As CAB noted, there is no evidence of support from teachers outside the Founding Members, community leaders, community businesses, organizations, local leaders, statewide leaders, or other members of the community. CAB also correctly determined that a majority of the Founding Members are not members of the District community, and Ms. Jackson was also the only member of the District community who spoke in support of YSSCS at the Hearing. Although YSSCS's evidence of sustainable support "need not demonstrate a threshold level of support among each of the discrete groups," *Provident*, 134 A.3d at 140, YSSCS does need to demonstrate that it "enjoys reasonably sufficient support in the aggregate from all groups," *Montour School District*, 889 A.2d at 687. The above-listed cases establish that the charter schools therein demonstrated stronger support from parents, students, teachers, and other members of the community in which their charter schools were proposed than the support demonstrated here by YSSCS. As

our review is limited to whether errors of law were committed and whether CAB's decision is supported by substantial evidence, *Provident*, 134 A.3d at 139 n.23, we are constrained to conclude that CAB did not err in denying YSSCS's appeal based on the lack of evidence of sustainable support.

### B. Equitable Estoppel

YSSCS maintains that CAB could not deny the Second Revised Application based on equitable estoppel.

> Equitable estoppel may arise from "an informal promise implied by one's words, deeds, or representations" that induces reasonable reliance by another to his detriment. *In re Jackson*, 280 A.3d 1074, 1083 (Pa. Cmwlth. 2022). Thus, the two essential elements of equitable estoppel are inducement and justifiable reliance. *Belleville v. David Cutler Grp.*, 118 A.3d 1184, 1199 (Pa. Cmwlth. 2015). Equitable estoppel may be asserted against the government. *Jackson*, 280 A.3d at 1083; *see also Chester Extended Care Ctr. v. Dep't of Pub. Welfare*, . . . 586 A.2d 379, 382 ([Pa.] 1991). "The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one induced." *Belleville*, 118 A.3d at 1199 (quoting *Zitelli v. Dermatology Educ. & Rsch. Found.*, . . . 633 A.2d 134, 139 ([Pa.] 1993)); *see also Jackson*, 280 A.3d at 1083.

*McLogie Props. Inc. v. Kidder Twp. Zoning Hearing Bd.*, 298 A.3d 1193, 1205 (Pa. Cmwlth. 2023), *appeal denied*, 311 A.3d 551 (Pa. 2024). For example, in *McLogie*, the appellant purchased a lot and applied for a zoning permit to build a residence. The zoning officer approved the appellant's zoning application and issued him a zoning permit. While under construction, the appellant observed that the foundation's front elevation was lower than what was shown in the approved plan. The appellant then sought advice from the building officer as the building officer and zoning officer share duties. The building officer told the appellant to submit a

23

revised plan. The appellant did so, and the building officer approved it without informing the zoning officer. The building officer also never revoked the appellant's original zoning permit. The zoning officer learned of the appellant's revised plan and sent an enforcement notice to the appellant informing it that it had built something without obtaining a zoning permit. The appellant appealed the enforcement notice. The building officer admitted that the lack of communication between him and the zoning officer may have caused some confusion. This Court concluded that the appellant was entitled to relief under equitable estoppel because it had established inducement and reliance. Namely, the appellant "relied to its detriment on [the building officer]'s approval of the revised construction plan, failure to revoke the building permit upon plan revision, and failure to inform [the appellant] that additional zoning approval must be sought[.]" *Id.*

YSSCS argues it modeled the Second Revised Application off applications for its other charter schools that have been approved and, thus, CAB is equitably estopped from denying its appeal. Unlike the appellant in *McLogie*, **YSSCS does not explain where or how CAB represented that it would grant a charter to YSSCS**. YSSCS rather simply maintains that CAB granted a similar application in *Young Scholars of McKeesport*, thus it "implicitly gave its stamp of approval" of YSSCS's Second Revised Application, but these applications are different applications for different charter schools. (*See* YSSCS's Br. at 24-25 (stating that YSSCS's Second Revised Application has "some differences" from the application in *Young Scholars of McKeesport*).) The granting of other charter school applications does not amount to inducement or justifiable reliance absent some "'words, deeds, or representations'" from CAB "that induces reasonable reliance by [YSSCS] to [its] detriment." *McLogie*, 298 A.3d at 1205 (quoting *In re Jackson*,

280 A.3d at 1083). Because YSSCS has not shown inducement from CAB, it cannot show justifiable reliance, either. Therefore, CAB was not equitably estopped from considering the Second Revised Application on its own merits as YSSCS has not demonstrated the elements of equitable estoppel.

## IV. CONCLUSION

In sum, we cannot conclude that CAB erred in denying YSSCS's appeal based on a lack of evidence of sustainable support. YSSCS's evidence in the aggregate does not lend itself to a conclusion that YSSCS demonstrated sustainable support. Lastly, equitable estoppel principles did not prevent CAB from considering YSSCS's Second Revised Application on its own merits and denying it. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Young Scholars of Southeastern     :
Pennsylvania Charter School,         :
                Petitioner    :
                          :
           v.           :    No. 514 C.D. 2023
                          :
Norristown Area School District     :
(Charter School Appeal Board),      :
                Respondent   :

# O R D E R

**NOW**, September 5, 2024, the Order of the Charter School Appeal Board entered in the above-captioned matter is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge